UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nellcor Puritan Bennett, LLC,

    Plaintiff,                                                     Case No. 11-cv-15697

v.

                                                            Sean F. Cox
                                                            District Court Judge

CAS Medical Systems, Inc.,                      Mona K. Majzoub
                                                            Magistrate Judge

    Defendant.
_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND**
**REQUEST FOR PRELIMINARY INJUNCTION**

        Plaintiff Nellcor Puritan Bennett, LLC ("Nellcor") and Defendant CAS Medical Systems, Inc. ("CAS") settled a prior patent infringement lawsuit. The settlement agreement provided that CAS would not challenge, or assist anyone else in challenging, the validity of "U.S. Patent No. 6,615,065" ('065 patent) in a proceeding before the United States Patent and Trademark Office ("USPTO"). At the time the parties entered into the settlement agreement, there was a pending merged "reissue/reexamination" proceeding related to the '065 patent within the USPTO in which the originally issued claims of the '065 patent had been amended. After the parties entered into the settlement agreement, and in response to an outstanding office action from the USPTO, Nellcor further amended its pending claims in the merged reissue/reexamination proceeding to require a "cross-talk" feature. In response to Nellcor's amendments to the claims, CAS filed a "protest" in the merged reissue/reexamination proceeding where CAS argued that the pending amended claims in the merged reissue/reexamination proceeding were invalid in light of prior art.

        On December 29, 2011, Nellcor filed the present lawsuit, asserting, among other things,

1

Breach of Contract (Count I) with regard to the settlement agreement. Thereafter, on July 2012, Nellcor filed its Motion for Partial Summary Judgment and Request for Preliminary and Permanent Injunctive Relief. The issue before the Court is whether CAS breached the settlement agreement as a matter of law by filing the protest challenging the validity of the amended claims in the merged reissue/reexamination proceeding. Nellcor also seeks a preliminary and permanent injunction preventing CAS from otherwise challenging the validity of the '065 patent in the USPTO in the future.

After considering Nellcor's arguments and the facts of the case, the Court **DENIES** Nellcor's Motion for Partial Summary Judgment and Request for Preliminary and Permanent Injunctive Relief. The Court finds that the amended claims in the merged reissue/reexamination proceeding were not part of "U.S. Patent No. 6,615,065" and therefore CAS did not breach the settlement agreement by filing the protest challenging the validity of those claims.

## BACKGROUND

On September 3, 2003, the USPTO issued the '065 patent. Once issued, the patent owner was free to file a lawsuit to enforce the patent. *See* 35 U.S.C. § 271.

On September 2, 2005, the patent owner, Somanetics Corporation, a predecessor to Plaintiff Nellcor Puritan Bennett LLC ("Nellcor"),[1] filed a reissue application relating to the '065 patent. Reissuing a patent is a procedure that allows a patent owner to correct errors in the patent, such as broadening or narrowing the scope of the claims. As part of the reissue application, Somanetics stated that it was filing the reissue application because it had not claimed everything it should have claimed in the '065 patent. A reissue application is very similar to a regular utility patent application. At the end of the reissue proceeding, the original patent is "surrendered" and the patent is reissued. 35 U.S.C. §§ 251- 252.

On March 31, 2008, CAS submitted a petition to initiate an *ex parte* reexamination proceeding against the '065 patent. In a reexamination proceeding, a party essentially asks the

---

[1] Nellcor acquired Somanetics in July 2010, while the litigation was pending.

USPTO to reconsider the validity of the claims in a patent in light of specific prior art. If the originally issued claims are too broad in light of the prior art, the patent owner can narrow the claims by amending the claims to require additional features which are not disclosed in the prior art. At the end of the reexamination proceeding, the USPTO will issue a "reexamination certificate" for the patent containing any amended claims under the same patent number (e.g., "Reexamination Certificate for U.S. Patent No. 6,615,065"). *See* M.P.E.P. § 2290.

On July 30, 2008, the USPTO *sua sponte* merged or consolidated the reissue and reexamination proceedings according to the USPTO's standard procedure. (Dkt. No. 35-5.) USPTO regulation 37 C.F.R. 1.565(d) states:

> (d) If a reissue application and an ex parte reexamination proceeding . . . are pending concurrently on a patent, a decision will usually be made to merge the two proceedings or to suspend one of the two proceedings. Where merger of a reissue application and an ex parte reexamination proceeding is ordered, the merged examination will be conducted in accordance with §§ 1.171 through 1.179, and the patent owner will be required to place and maintain the same claims in the reissue application and the ex parte reexamination proceeding during the pendency of the merged proceeding. The examiner's actions and responses by the patent owner in a merged proceeding will apply to both the reissue application and the ex parte reexamination proceeding and will be physically entered into both files. Any ex parte reexamination proceeding merged with a reissue application shall be concluded by the grant of the reissued patent. For merger of a reissue application and an inter partes reexamination, see § 1.991.

On August 7, 2009, Somanetics Corporation, filed a patent infringement lawsuit against Defendant CAS Systems, entitled *Somanetics Corporation v. CAS Medical Systems, Inc.*, Case No. 2:09-cv-13110-SFC (E.D. Mich.). (Compl. ¶ 12.) In that lawsuit, Somanetics alleged that certain CAS products infringed upon the '065 Patent and other patents.

On October 27, 2010, Nellcor and CAS entered into a settlement agreement resolving the patent infringement case. One of the covenants in the settlement agreement provided that CAS

3

would not challenge or assist a third party in challenging the validity of the "Litigated Patents," which was defined in the settlement agreement to include the '065 patent. However, the settlement agreement allowed CAS to defend itself by arguing that the '065 patent is invalid if it was sued again for infringing the '065 patent. (Settlement Agreement ¶ 3.1, Dkt. No. 26.) Specifically Section 3.1 of the Settlement agreement states:

> Subject to Somanetics's compliance with Section 2, CAS covenants: (I) not to assert infringement claims based on the CAS IP against any Covidien Group member or any Covidien Related Person involving any Current Covidien Group Product and/or any Modified Covidien Group Product; and (ii) not to challenge or assist a Third Party in challenging the validity, enforceability or ownership of the Litigated Patents in the United States Patent and Trademark Office (collectively, the "CAS Covenant"). Notwithstanding the foregoing sentence, if the Litigated Patents are re-asserted against CAS after the Effective Date of this Agreement, CAS may challenge (I) the validity of the Litigated Patents and/or (ii) the enforceability of the Litigated Patents due solely to alleged inequitable conduct. (emphasis added).

The Settlement Agreement defines "Litigated Patents" in Section 1.24 as follows: "'Litigated Patents' as used herein shall mean U.S. Patent Nos. 5,482,034, 5,902,235, and/or 6,615,065."

On May 20, 2011, Nellcor filed a response to a previous office action issued by the USPTO in the merged reissue/reexamination proceeding. In the response, Nellcor amended the then pending claims in the reissue/reexamination proceeding to require a "cross-talk" feature. In the remarks section accompanying the amendment, Nellcor indicated that it had a previous meeting with the USPTO Examiner (called an "interview") where the Examiner agreed that if Nellcor amended the pending claims to require this cross-talk feature, then the USPTO Examiner would allow the claims to issue. According to Nellcor, at this point, CAS realized that the USPTO was going to allow the amended claims to issue.

On June 27, 2011, shortly after entering into the settlement agreement in which it promised not to challenge the validity of the '065 patent, CAS filed a "protest" with the USPTO in the pending merged reexamination/reissue proceeding for the '065 patent (hereinafter "reissue proceeding"). [2] A protest is a mechanism by which a third-party may submit prior art and arguments to the USPTO in a pending patent application explaining why the claims in the pending patent application should not be allowed to issue into a patent. *See* 37 C.F.R. § 1.291; M.P.E.P. § 1901. The June 27, 2011 protest states:

> It is respectfully requested that the present Protest pursuant to 37 C.F.R. 1.291(c)(5) be entered into the merged Reexamination and Reissue for U.S. Patent No. 6,615,065 identified above. . . The present Protest is the second Protest submitted in the merged Reexamination and Reissue for U.S. Patent No. 6,615,065. . . .

(Dkt. No. 35-7.) In this Protest, CAS argued to the USPTO that the amended pending claims were not patentable based on specific prior art, including a patent to "Liva." Specifically, CAS stated in the Protest that "claims 172-255 of the merged Reexamination and Reissue for U.S. Patent No. 6,615,065 are unpatentable." (June 27, 2011 Protest at p. 12.)

After receiving Nellcor's Amendment and CAS's Protest, in October 2011, the USPTO Examiner issued a final rejection of the '065 patent, namely based on the Liva prior art patent. Nellcor argues that this final rejection was a direct result of CAS filing the protest with the USPTO.

In response to the final rejection issued by the USPTO, Nellcor appealed and also filed a motion for reconsideration with the USPTO. On May 18, 2012, the USPTO issued a response to Nellcor's motion for reconsideration by way of "a non-final office action." In this office action, the USPTO notified Nellcor that it was withdrawing its October 2011 rejection that Nellcor had

---

[2] This was the second protest filed by CAS. CAS filed the first protest on February 24, 2009 in the combined reissue/reexamination proceeding.

appealed and was now basing its rejections on different prior art combinations. With the non-final office action, the USPTO terminated the appeal and Nellcor will now continue to make its arguments regarding patentability to the USPTO Examiner. Nellcor alleges that the USPTO Examiner based his new rejection at least in part on the arguments made by CAS in the June 27, 2011 protest.

On December 29, 2011, Nellcor filed the present lawsuit, which contains four counts. Count I—Breach of Contract alleges that CAS breached the settlement agreement by filing the Protest in the pending reexamination proceeding. Count II—Violation of 15 U.S.C. § 1125(A)(1)(A) and (B), Count III—Common Law Unfair Competition, and Count IV—Trade Libel generally allege that CAS has engaged in false advertising. Counts II-IV are not factually related to Count I.

On August 14, 2012, the Court granted-in-part a motion filed by CAS to stay this lawsuit pending the outcome of the reexamination/reissue proceeding for the '065 patent. In this motion, CAS argued that the extent of any damages to Nellcor cannot be determined until the reexamination proceeding is finished. After considering the merits of the motion, the Court stayed discovery and trial of the damages portion of this case. The Court did not stay any other aspect or claim in the case. (Order Granting-In-Part Def.'s Mot. to Stay, Dkt. No. 37.)

On July 20, 2012, Plaintiff Nellcor filed the present motion for partial summary judgment on its breach of contract claim. Nellcor also seeks a preliminary and permanent injunction preventing CAS from otherwise challenging the validity of the '065 patent in the USPTO in the future.

**STANDARD OF REVIEW**

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). Rule 56(a) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The mere existence of a scintilla of evidence in support of the nonmoving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 432 (6th Cir. 2002).

**ANALYSIS**

In the Settlement Agreement, CAS promised not to challenge the validity of "U.S. Patent No. 6,615,065." Specifically, the Settlement Agreement states in pertinent part:

> CAS covenants: . . . (ii) not to challenge or assist a Third Party in challenging the validity, enforceability or ownership of the Litigated Patents in the United States Patent and Trademark Office (collectively, the "CAS Covenant"). Notwithstanding the foregoing sentence, if the Litigated Patents are re-asserted against CAS after the

>Effective Date of this Agreement, CAS may challenge (I) the validity of the Litigated Patents and/or (ii) the enforceability of the Litigated Patents due solely to alleged inequitable conduct.

The Settlement Agreement defines "Litigated Patents" in Section 1.24 as follows: "'Litigated Patents' as used herein shall mean U.S. Patent Nos. 5,482,034, 5,902,235, and/or 6,615,065."

Nellcor argues that it should be granted summary judgment on its breach of contract claim because CAS breached the settlement agreement by filing the June 27, 2011 protest in the merged reissue/reexamination proceeding arguing that the amended pending claims in that proceeding were invalid. On the other hand, CAS argues that "U.S. Patent No. 6,615,065" means the original '065 patent as the USPTO issued it with its original claims and does not include the amended claims in the merged reissue/reexamination proceeding.

Both parties agree that the issue before the Court concerning whether CAS breached the settlement agreement is whether the meaning of "U.S. Patent No. 6,615,065" included the amended claims in the reissue/reexamination proceeding. If "U.S. Patent No. 6,615,065" is interpreted to include the amended claims in the reexamination/reissue proceeding containing the cross-talk feature, then CAS would have breached the settlement agreement by filing the June 27, 2011 protest.

The Settlement Agreement provides that it shall be interpreted "in accordance with the laws of the United States of America and the State of Michigan, without reference to conflict of laws principles." (Settlement Agreement § 9.1.)

A settlement agreement is a contract. *Gramer v. Gramer*, 207 Mich. App. 123, 125 (1994). Under Michigan law, the elements for a breach of contract claim are: (1) a contract existed between the parties; (2) the contract imposes an obligation upon a party; (3) the party breaches that obligation; and (4) the breach caused injury to the other party. *Nash Finch Co. v. 2125 Vienna Corp.*, 2008 WL 786804, *4 (E.D. Mich. 2008).

Under Michigan law, "if the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich. 19, 24 (2008). If a contractual provision is unambiguous, under the parol evidence rule, a party may not use extrinsic evidence to interpret the unambiguous contractual language. *Shay v. Aldrich*, 487 Mich. 648, 667 (2010). On the other hand, when a contractual provision is ambiguous, extrinsic evidence is admissible to determine the actual intent of the parties. Michigan courts "will not create ambiguity where the terms of the contract are clear." *City of Grosse Pointe Park v. Michigan Municipal Liability and Prop. Pool*, 473 Mich. 188, 198 (2005). While the proper interpretation of an unambiguous contractual provision is a question of law for the judge, interpretation of an ambiguous contractual provision is for a jury, subject to a motion for summary judgment. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469-70 (2003).

After considering the parties arguments and the facts of the case, the Court finds that Nellcor is not entitled to summary judgment. The issue before the Court is whether CAS violated its covenant in the settlement agreement not to challenge the validity of "U.S. Patent No. 6,615,065" when it submitted a protest challenging the validity of amended claims in the pending reissue/reexamination proceeding. As stated above, Michigan courts enforce a contract as written and will not rewrite a contractual provision. The Court finds that the amended claims in the merged reissue/reexamination proceeding were not part of "U.S. Patent No. 6,615,065" and therefore CAS did not breach the settlement agreement by filing the protest challenging the validity of those claims. If the USPTO decides to issue the amended claims in the merged reissue/reexamination into a patent, the original patent will be "surrendered," or terminated, and the USPTO will reissue the patent under

a new patent number (e.g., RE12,345), not under the original patent number. (October 18, 2012 oral argument tr. at pgs. 6-7 ll. 9-9.) Under these facts, the Court finds that Nellcor is not entitled to summary judgment.

A merged reissue/reexamination proceeding will ultimately issue into a new patent with its own reissue patent number if it contains patentable subject matter. When the USPTO merges a reissue and reexamination proceeding, the merged proceeding follows the procedure for reissue patent applications (e.g., 37 C.F.R. §§ 1.171 through 1.179) and the USPTO will ultimately grant a new reissued patent with a new patent number if the merged proceeding contains patentable subject matter. Specifically, USPTO regulation 37 C.F.R. 1.565(d) states (emphasis added):

> (d) If a reissue application and an ex parte reexamination proceeding . . . are pending concurrently on a patent, a decision will usually be made to merge the two proceedings or to suspend one of the two proceedings. Where merger of a reissue application and an ex parte reexamination proceeding is ordered, the merged examination will be conducted in accordance with §§ 1.171 through 1.179, and the patent owner will be required to place and maintain the same claims in the reissue application and the ex parte reexamination proceeding during the pendency of the merged proceeding. The examiner's actions and responses by the patent owner in a merged proceeding will apply to both the reissue application and the ex parte reexamination proceeding and will be physically entered into both files. <u>Any ex parte reexamination proceeding merged with a reissue application shall be concluded by the grant of the reissued patent.</u> For merger of a reissue application and an inter partes reexamination, see § 1.991.

Moreover, the statutes on reissue proceedings specifically state that at the conclusion of a reissue proceeding, the original patent is "surrendered" and the USPTO will grant a new reissued patent if the patent owner is entitled to a patent. 35 U.S.C. § 251 states as follows (emphasis added):

> **(a) In general.**--Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a

defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, <u>the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent</u>, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

**(b) Multiple reissued patents.**--The Director may issue several reissued patents for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued patents.

\*   \*   \*

**(d) Reissue patent enlarging scope of claims.**--No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

35 U.S.C. § 252 states (emphasis added):

<u>The surrender of the original patent shall take effect upon the issue of the reissued patent</u>, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the

> continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

The Court finds that other contractual provisions in the Settlement Agreement, which specifically mention "reissue" and "reexamination" proceedings, support the Court's conclusion that "U.S. Patent No. 6,615,065" does not include the amended claims in the merged reissue/reexamination proceeding. The logical conclusion that must be drawn from this fact is that the parties did not intend the contractual provision at issue in this case to include reissued patents and applications. For example, the settlement agreement defines "Somanetics IP" as:

> 1.30 "Somanetics IP" as used herein shall mean all U.S. patents issued as of the Complaint Date that were owned by or licensed exclusively to the former Somanetics Corporation, or as to which the former Somanetics Corporation had the right to sue for infringement thereof, together with all registrations, <u>reissues</u>, divisionals, continuations, continuations-in-part, <u>reexaminations</u>, renewals and foreign counterparts of the foregoing, as well as all other U.S. patents claiming priority from any of the foregoing.

(Settlement Agreement § 1.30 (emphasis added.)) The parties could have added "reissue" proceedings to the definition of "Litigated Patents" as they did in other contractual provisions, but they did not do so. While Nellcor tries to distinguish Section 1.30 of the Settlement Agreement by the fact that this contractual provision has a temporal limitation as of the date the complaint was filed, there is no reason why the parties could not have specifically mentioned "reissue" proceedings in the definition of the "Litigated Patents."

Nellcor argues that the meaning of "U.S. Patent No. 6,615,065" in the Settlement Agreement must be considered in light of the facts that at the time the settlement agreement was signed, the merged reissue/reexamination proceeding was already on-going and the original claims as issued in the '065 patent had already been amended. Nellcor argues that, because all the original claims in the '065 patent were as a practical matter gone at the time the parties entered into the settlement agreement, there would be no reason for CAS to file another request for reexamination directed to the originally issued claims. Nellcor argues that an interpretation of "U.S. Patent No. 6,165,065" that doesn't include the amended claims of the reissue/reexamination would render the covenant meaningless. Even assuming this is not extrinsic evidence, the Court does not find this evidence to be particularly persuasive. The covenant was not meaningless as to the '065 patent because it prevented CAS from making further challenges to the original '065 patent or its original claims.

In its motion, Nellcor also seeks a preliminary injunction preventing CAS from filing additional Protests in the merged reissue/reexamination proceeding. Because the Court disagrees with Nellcor's interpretation of the settlement agreement, the Court also denies Nellcor's request for a preliminary injunction.

## CONCLUSION AND ORDER

**IT IS ORDERED** that Plaintiff Nellcor Puritan Bennett LLC's Motion for Partial Summary Judgment and Request for Preliminary and Permanent Injunctive Relief is **DENIED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: December 19, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nellcor Puritan Bennett, LLC,

    Plaintiff,                                                    Case No. 11-cv-15697

v.

                                                              Sean F. Cox
                                                              District Court Judge

CAS Medical Systems, Inc.,                       Mona K. Majzoub
                                                             Magistrate Judge

    Defendant.
_____/

**PROOF OF SERVICE**

       I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2012, by electronic and/or ordinary mail.

                                                                S/Jennifer McCoy
                                                                Case Manager