**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NELLCOR PURITAN BENNETT, LLC,

       Plaintiff,                                       Case No. 11-cv-15697

v.

                                                    Hon. Sean F. Cox
                                                    United States District Court Judge

CAS MEDICAL SYSTEMS, INC.,

       Defendant.

_____/

**OPINION AND ORDER
DENYING PLAINTIFF NELLCOR PURITAN BENNETT LLC'S MOTION FOR
RECONSIDERATION [DOCKET ENTRY NO. 60]**

       Currently before the Court is Plaintiff Nellcor Puritan Bennett LLC's ("Nellcor") Motion for Reconsideration [Docket Entry No. 60] and Notice of Supplemental Authority Regarding Plaintiff's Motion for Reconsideration [Docket Entry No. 66].

       For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Reconsideration [Docket Entry No. 60].

**BACKGROUND**

       Nellcor's complaint contains claims for breach of a settlement agreement and false advertising. At issue is Nellcor's motion for partial summary judgment as to its claim for breach of the settlement agreement. (Docket Entry No. 55.)

       Nellcor and CAS Medical Systems, Inc. ("CAS") settled a prior patent infringement lawsuit brought by Nellcor against CAS through a written settlement agreement. The settlement agreement between the parties provides that CAS would not challenge the validity of the "Litigated Patents," which was defined to include "U.S. Patent No. 6,615,065," within the United States Patent and

Trademark Office ("USPTO") unless Nellcor sued CAS again for infringing the Litigated Patents. The settlement agreed was essentially a "cease fire" where no money exchanged hands. The issue before the Court in the motion for partial summary judgment was whether CAS breached the settlement agreement as a matter of law by filing a protest with the USPTO challenging the validity of new/amended claims in a merged reissue/reexamination proceeding. (Docket Entry No. 55, at 2.)

On December 19, 2012, the Court issued an Opinion and Order Denying Plaintiff's Motion for Partial Summary Judgment. (Docket Entry No. 55.) The Court found that the amended claims in the merged reissue/reexamination proceeding were not part of "U.S. Patent No. 6,616,065" ('065 Patent) and therefore CAS did not breach the settlement agreement when it submitted the protest challenging the validity of amended claims in the reissue/reexamination proceeding.

## STANDARD OF REVIEW

Local Rule 7.1(h)(3) provides the following standard regarding motions for reconsideration:

> Generally, and without restricting the Court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

Eastern District of Michigan, Local Rule 7.1(h)(3).

## ANALYSIS

Nellcor argues that the Court erred in construing the terms "Litigated Patents" and "U.S. Patent No. 6,615,065" as not including the amended claims in the merged reissue/reexamination proceeding. According to Nellcor, while a reissue patent application will ultimately issue into a new patent with a different patent number if the patent owner does not abandon its patent application, at the time CAS filed its protest, the reissue/examination proceeding was still the '065 Patent. (Docket Entry No. 60, at 1.) The Court disagrees.

In interpreting a contract, the Court will carry out the intention of the parties as reflected in

2

their written agreement. *See, e.g., In re Smith Trust*, 480 Mich. 19, 24 (2008). At the time CAS filed the protest in the merged reissue/reexamination proceeding, the claims pending in the merged reissue/reexamination proceeding, although related to the '065 Patent, were not the '065 Patent (i.e., not a "Litigated Patent").

In patent law, the '065 Patent is a specific document issued by the USPTO. A patent grants its owner the right to exclude others from making, using, selling, and/or importing the invention set forth in the claims of the patent. *See, e.g.*, 35 U.S.C. § 154(a)(1). A patent is very different from a patent application or even for that matter claims pending in a reexamination proceeding, which are not enforceable property rights. In its Opinion and Order Denying Nellcor's Motion for Summary Judgment, the Court reviewed the law regarding protests and merged reissue/reexamination proceedings to determine if the amended claims in the merged reissue/reexamination proceeding could be said to be part of the '065 Patent, the "Litigated Patent." The Court noted that protests are generally filed against patent applications, not against issued patents or patents in ex parte reexamination proceedings.[1] The Court also noted that the USPTO generally treats a merged reissue/reexamination proceeding as a reissue patent application, although parallel files are maintained for the reissue application and reexamination proceeding. For example, the Court noted that a reissue patent application will generally result in a reissue patent, not a reexamination certificate (assuming there is patentable subject matter and assuming the applicant does not abandon the reissue application). A patent application must go through an extensive examination process at the USPTO. At the end of the examination process, if USPTO decides to grant a patent, the USPTO will issue a patent with its own patent number. The same is true for reissue patent applications. In

---

[1] Protests may be filed against pending patent applications, but not in reexamination proceedings. For practical purposes, the USPTO treats merged reissue/reexamination proceeding as a reissue patent application. *See* 37 C.F.R. § 1.565(d) (stating that a merged reissue/reexamination proceeding will follow the rules for a reissue patent application (e.g., 37 C.F.R. 171 through 1.179)). In fact, Nellcor admitted at oral argument that protests cannot be filed in ex parte reexamination proceedings unless the reexamination proceeding has been merged with a reissue patent application. (Docket Entry No. 51, at 7–8; Docket Entry No. 60-7.)

this case, Nellcor filed a reissue patent application related to the '065 Patent and the USPTO assigned this new patent application number 11/219,298. Later the USPTO merged the reissue patent application with a reexamination proceeding having Control No. 90/010,128. At the point in time when CAS filed the protest, the amended pending claims in the merged reissue/reexamination proceeding were not part of the "Litigated" '065 Patent. Accordingly, the Court rejects Nellcor's argument that the amended claims were part of the '065 Patent at the time CAS filed the protest.

The Court also bases its construction of the disputed claim terms on the context of this particular settlement agreement and the language used in the settlement agreement. The contract at issue was a settlement agreement which resolved an on-going patent infringement lawsuit. The contractual provision at issue in the settlement agreement provided that CAS would not challenge the validity of the "Litigated Patents" in the USPTO unless Nellcor sued CAS again for patent infringement. The term "Litigated Patents" was defined to mean the three patents Nellcor asserted in the lawsuit as being infringed, including "U.S. Patent No. 6,615,065." The settlement agreement was narrow in scope and was essentially a "cease fire" where no money exchanged hands. The nature of the settlement agreement and the term "Litigated Patents" evidences an intent to limit the meaning to the specific patents in the lawsuit. Moreover, even though other sections of the settlement agreement specifically included reissue patents and reexaminations in different provisions, and even though at the time the parties entered into the settlement agreement the merged reissue/reexamination proceeding was already ongoing in parallel to the lawsuit, the settlement agreement did not include the pending merged reissue/reexamination proceeding within the definition of "Litigated Patents." If the parties had wanted to include the pending reissue/reexamination proceeding within the definition of "Litigated Patents," the reasonable conclusion is that they would have done so.

Nellcor also argues that the Court incorrectly based its decision on the fact that the reissue/reexamination proceeding would ultimately result in the surrender of the '065 Patent and

issuance of a new reissued patent having a new patent number. Nellcor argues that it could in the future, although Nellcor still to-date has not done so, abandon the reissue patent application and then the reexamination proceeding would result (assuming the claims are patentable) in a reexamination certificate having the same '065 Patent number. Nellcor misunderstands the Court's reasoning. At the point in time CAS filed its protest, the Court held "that the amended claims in the merged reissue/reexamination proceeding were not part of 'U.S.. Patent No. 6,615,065'. . . ." (Opinion at p. 2, Docket Entry No. 55.) In other words, at the point in time that CAS filed its protest, the merged reissue/reexamination proceeding was essentially a request for a new reissue patent and an offer to surrender the '065 Patent. 37 C.F.R. § 1.178(a) (stating that an application for a reissue patent shall constitute an offer to surrender the original patent). The pending amended claims in the merged proceeding were not a "Litigated Patent."

Nellcor also argues that the Court erred in holding that the "cross-talk" language added to the amended claims was not part of the '065 Patent. Nellcor misstates the Court's holding. The Court's Opinion did not state that the "cross-talk" feature was not disclosed anywhere in the '065 Patent. Rather, the Court found "that the amended claims in the merged reissue/reexamination proceeding were not part of 'U.S.. Patent No. 6,615,065'. . . ." The Court has not based its holding on the "cross-talk" feature being "new matter" within the meaning of patent law.

In its Notice of Supplemental Authority Regarding Plaintiff's Motion for Reconsideration (Docket Entry No. 66), Nellcor argues that recent authority from the Federal Circuit controls the outcome of this motion, specifically *Intel Corp. v. Negotiated Data Solutions, Inc*., 703 F.3d 1360 (Fed. Cir. 2012). The Court finds the facts of the present case are distinguishable from the facts of *Intel Corp*. In *Intel Corp*., Intel and National Semiconductor entered into a broad patent cross-license agreement. The agreement gave Intel a royalty-free license under "National Patents" for the life of the patents. The license agreement defined National Patents as:

> all classes or types of patents and utility models of all countries of the world, applications for which have a first effective filing date in any country prior to the date of expiration or termination of this Agreement, in respect of which, as of the EFFECTIVE DATE, or

> thereafter during the term of this Agreement, NATIONAL owns or controls . . . [or has] the right to grant licenses of the scope granted herein.

After Intel and National entered into the license agreement, National assigned several of the licensed patents to Vertical Networks, Inc. ("Vertical"), who filed broadening reissue patent applications with the USPTO for three of the licensed patents. Vertical then assigned the original patents and their corresponding reissue patent applications to Negotiated Data Solutions, Inc. ("N-Data"). Later, well after the patent licensing contract expired, the USPTO issued to N-Data reissue patents based on the original patents. N-Data then sued Dell, Inc., Intel's customer, for infringing the reissued patents. Intel intervened in the suit and argued that its products sold to Dell did not infringe the reissue patents because its products were covered by the license agreement. Applying California law, the Federal Circuit stated that "the key question in this case is not whether the Reissue Patents are National Patents under the definition set forth in the Agreement, but whether the Agreement evinces an intent on the part of the parties that Reissue Patents *should be treated as* National Patents under the Agreement." *Id*. at 1365. In considering the broad nature of the license agreement and factual situation, the Federal Circuit held that "it is reasonable to conclude that the parties' mutual intent at the time of contracting was that the broad and unrestricted grant of license under National Patents extended to any reissues thereof." *Id*. at 1366 (emphasis added). It is clear that the Federal Circuit based its decision on the broad nature of the license agreement in determining the mutual intent of the parties. In contrast, in this case, the covenant at issue was specifically limited to the "Litigated Patents" in the context of a narrowly drafted settlement agreement. In *Intel*, The Federal Circuit was also concerned that N-Data could inequitably avoid the effect of the license agreement by unilaterally reissuing a licensed patent after the contract term. *Id*. at 1367. The same issue is not present in this case. Accordingly, the Court finds the facts of this case to be distinguishable. Moreover, the Court notes that Michigan law applies to this case.

  The Court has considered Nellcor's remaining arguments in its motion for reconsideration and finds them unpersuasive.

## CONCLUSION

**IT IS ORDERED**, Plaintiff's Motion for Reconsideration [Docket Entry No. 60] is **DENIED.**

**IT IS SO ORDERED**.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: April 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 23, 2013, by electronic and/or ordinary mail.

                                        S/Jennifer McCoy
                                        Case Manager