**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NELLCOR PURITAN BENNETT LLC,

       Plaintiff,

v.                                                                  Case No.: 11-cv-15697

CAS MEDICAL SYSTEMS, INC,                          Honorable Sean F. Cox
                                                                    Magistrate Judge Mona K. Mazjoub

       Defendant.

_____/

**OPINION AND ORDER**
**GRANTING DEFENDANT CAS MEDICAL SYSTEM, INC.'S MOTION FOR**
**SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT**

Nellcor Puritan Bennett LLC ("Nellcor") and CAS Medical Systems, Inc. ("CAS") settled a prior patent infringement lawsuit. The settlement agreement provided that CAS would not challenge, or assist anyone else in challenging, the validity of "U.S. Patent No. 6,615,065" ('065 patent) in a proceeding before the United States Patent and Trademark Office ("USPTO"). At the time the parties entered into the settlement agreement, there was a pending merged "reissue/reexamination" proceeding related to the '065 patent within the USPTO in which the originally issued claims of the '065 patent had been amended. After the parties entered into the settlement agreement, and in response to an outstanding office action from the USPTO, Nellcor again amended its pending claims in the merged reissue/reexamination proceeding to require structure or steps to reduce "cross-talk" in order to distinguish the claims from prior art. In response to Nellcor's amendments to the claims, CAS filed a "protest" in the merged reissue/reexamination proceeding where CAS argued that the pending amended claims in the merged reissue/reexamination proceeding were invalid in light of prior art.

Currently before the Court is Defendant CAS Medical System, Inc.'s Motion for Summary

1

Judgment on Count I of the Complaint. (Dkt. No. 63.) The issue in Count I is whether or not CAS breached the settlement agreement by filing the protest challenging the validity of the amended claims in the merged reissue/reexamination proceeding. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decision making process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided on the briefs.

For the reasons set forth below, the Court shall **GRANT** Defendant CAS Medical Systems, Inc.'s Motion for Summary Judgment on Count I of the Complaint. The Court finds that the pending amended claims in the pending merged reissue/reexamination proceeding were not part of "U.S. Patent No. 6,615,065." Therefore, the Court finds that CAS did not breach the settlement agreement by filing the protest challenging the validity of those claims.

## FACTS AND PROCEDURAL HISTORY[1]

On September 3, 2003, the USPTO issued the '065 patent. Once issued, the patent owner was free to file a lawsuit to enforce the patent. *See* 35 U.S.C. § 271.

The '065 Patent is generally directed to a design for a spectrophotometric cerebral oximeter, which is a device that monitors oxygen saturation levels in the brain by transmitting light into the brain and detecting the light that is reflected. There is a correlation between the oxygen saturation level and the amount of light that is absorbed and reflected by blood in the brain. Surgeons use a cerebral oximeter to monitor for a drop in oxygen saturation during surgical procedures. If oxygen concentration drops significantly during an operation, the surgeon can take appropriate action to prevent permanent injury to the patient.

On September 2, 2005, the owner of the '065 Patent, Somanetics Corporation, a predecessor

---

[1] Much of the facts and procedural history in this Opinion, including the prosecution history concerning the merged reissue/reexamination proceeding, were provided by the parties in their briefs related to Plaintiff Nellcor Puritan Bennett LLC's July 20, 2012 Motion for Summary Judgment and Request for Preliminary and Permanent Injunctive Relief. (Dkt. Nos. 34, 35, 40, and 41.)

to Plaintiff Nellcor,[2] filed a reissue patent application relating to the '065 patent. Reissuing a patent is a procedure that allows a patent owner to correct errors in the patent, such as broadening or narrowing the scope of the claims. As part of the reissue patent application, Somanetics stated that it was filing the reissue patent application because it had not claimed everything it should have claimed in the '065 patent. A reissue patent application is very similar to a regular utility patent application. At the end of the reissue proceeding, the original patent is "surrendered" and the patent is reissued with a new reissue patent number. 35 U.S.C. §§ 251- 252. The USPTO assigned the reissue patent application serial number 11/219,298.

On March 31, 2008, CAS, who was a competitor to Somanetics, submitted a petition to initiate an *ex parte* reexamination proceeding against the '065 patent. In a reexamination proceeding, a party essentially asks the USPTO to reconsider the validity of the claims in a patent in light of specific prior art. 35 U.S.C. § 302. If the originally issued claims are too broad in light of the prior art, the patent owner can narrow the claims by amending the claims to require additional features which are not disclosed in the prior art. At the end of the reexamination proceeding, if the USPTO concludes that any original or amended claims are patentable, the USPTO will issue a "reexamination certificate" confirming the validity of any of the original claims and adding any amended claims under the same patent number (e.g., "Reexamination Certificate for U.S. Patent No. 6,615,065"). *See* M.P.E.P. § 2290. At the point in time the USPTO issues the reexamination certificate any amended claims become legally enforceable. *See* M.P.E.P. § 2294. The USPTO assigned the reexamination proceeding "Control Number" 90/010,128.

On July 30, 2008, the USPTO *sua sponte* merged or consolidated the reissue and reexamination proceedings according to the USPTO's standard procedure. (Dkt. No. 35-5.) USPTO regulation 37 C.F.R. 1.565(d) states:

> (d) If a reissue application and an ex parte reexamination
> proceeding . . . are pending concurrently on a patent, a decision will

---

[2] Nellcor acquired Somanetics in July 2010, while the litigation was pending.

3

usually be made to merge the two proceedings or to suspend one of the two proceedings. Where merger of a reissue application and an ex parte reexamination proceeding is ordered, the merged examination will be conducted in accordance with §§ 1.171 through 1.179, and the patent owner will be required to place and maintain the same claims in the reissue application and the ex parte reexamination proceeding during the pendency of the merged proceeding. The examiner's actions and responses by the patent owner in a merged proceeding will apply to both the reissue application and the ex parte reexamination proceeding and will be physically entered into both files. Any ex parte reexamination proceeding merged with a reissue application shall be concluded by the grant of the reissued patent. For merger of a reissue application and an inter partes reexamination, see § 1.991.

On August 7, 2009, Somanetics Corporation, filed a patent infringement lawsuit against Defendant CAS, entitled *Somanetics Corporation v. CAS Medical Systems, Inc.*, Case No. 2:09-cv-13110-SFC (E.D. Mich.).   (Compl. ¶ 12.)  In that lawsuit, Somanetics alleged that certain CAS products infringed upon the '065 Patent and other patents.  To be more specific, Somanetics asserted that CAS infringed the claims in the '065 Patent, not the pending claims in the merged reissue/reexamination proceeding.  Only claims present in an issued patent or reexamination certificate are enforceable.

On October 27, 2010, Nellcor and CAS entered into a settlement agreement resolving the patent infringement case.  One of the covenants in the settlement agreement provided that CAS would not challenge or assist a third party in challenging the validity of the "Litigated Patents," which was defined in the settlement agreement to include the '065 patent.  However, the settlement agreement allowed CAS to defend itself by arguing that the '065 patent is invalid if it was sued again for infringing the '065 patent.  (Settlement Agreement ¶ 3.1, Dkt. No. 26.)  Specifically Section 3.1 of the settlement agreement states:

Subject to Somanetics's compliance with Section 2, CAS covenants: (i) not to assert infringement claims based on the CAS IP against any Covidien Group member or any Covidien Related Person involving any Current Covidien Group Product and/or any Modified Covidien Group Product; and (ii) not to challenge or assist a Third Party in challenging the validity, enforceability or ownership of the Litigated Patents in the United States Patent and Trademark Office (collectively, the "CAS Covenant"). Notwithstanding the foregoing sentence, if the Litigated Patents are re-asserted against CAS after the Effective Date of this Agreement, CAS may challenge (i) the validity of the Litigated Patents and/or (ii) the enforceability of the Litigated Patents due solely to alleged inequitable conduct. (Emphasis added).

The Settlement Agreement defines "Litigated Patents" in Section 1.24 as follows: "'Litigated Patents' as used herein shall mean U.S. Patent Nos. 5,482,034, 5,902,235, and/or 6,615,065."

On May 20, 2011, Nellcor filed a response to a previous office action issued by the USPTO in the merged reissue/reexamination proceeding. In the response, Nellcor amended the then pending claims in the reissue/reexamination proceeding to require structure or steps to reduce "cross-talk." "Cross-talk" is essentially when a sensor receives a light transmission that is intended for another sensor. In the remarks section accompanying the amendment, Nellcor indicated that it had a previous meeting with the USPTO Examiner (called an "interview") where the Examiner agreed that, if Nellcor amended the pending claims to require this cross-talk feature, then the USPTO Examiner would allow the claims to issue. According to Nellcor, at this point, CAS realized that the USPTO was going to allow the amended claims to issue.

On June 27, 2011, after entering into the settlement agreement in which it promised not to challenge the validity of the '065 patent, CAS filed a "protest" with the USPTO in the pending merged reissue/examination proceeding for the '065 patent (hereinafter "reissue proceeding").[3] A

---

[3] This was the second protest filed by CAS. CAS filed the first protest on February 24, 2009 in the combined reissue/reexamination proceeding.

5

protest is a mechanism by which a third-party may submit prior art and arguments to the USPTO in a pending patent application explaining why the claims in the pending patent application should not be allowed to issue into a patent. *See* 37 C.F.R. § 1.291; M.P.E.P. § 1901. The June 27, 2011, protest states:

> It is respectfully requested that the present Protest pursuant to 37 C.F.R. 1.291(c)(5) be entered into the merged Reexamination and Reissue for U.S. Patent No. 6,615,065 identified above. . . The present Protest is the second Protest submitted in the merged Reexamination and Reissue for U.S. Patent No. 6,615,065. . . .

(Dkt. No. 35-7.) In this Protest, CAS argued to the USPTO that the amended pending claims were not patentable based on specific prior art, including a patent to "Liva." Specifically, CAS stated in the Protest that "claims 172-255 of the merged Reexamination and Reissue for U.S. Patent No. 6,615,065 are unpatentable." (June 27, 2011 Protest at p. 12.)

After receiving Nellcor's Amendment and CAS's Protest, in October 2011, the USPTO Examiner issued a final rejection of the pending claims in the merged reissue/reexamination proceeding, namely based on the Liva prior art patent. Nellcor argues that this final rejection was a direct result of CAS filing the protest with the USPTO.

In response to the final rejection issued by the USPTO, Nellcor appealed and also filed a motion for reconsideration with the USPTO. On May 18, 2012, the USPTO issued a response to Nellcor's motion for reconsideration by way of "a non-final office action." In this office action, the USPTO notified Nellcor that it was withdrawing its October 2011 rejection that Nellcor had appealed and was now basing its rejections on different prior art combinations. With the non-final office action, the USPTO terminated the appeal and Nellcor then continued to make its arguments regarding patentability to the USPTO Examiner. Nellcor alleges that the USPTO Examiner based his new rejection at least in part on the arguments made by CAS in the June 27, 2011 protest.

6

On December 29, 2011, Nellcor filed the present lawsuit, which contains four counts: (1) Count I—Breach of Contract alleges that CAS breached the settlement agreement by filing the Protest in the pending merged reissue/reexamination proceeding; (2) Count II—Violation of 15 U.S.C. § 1125(A)(1)(A) and (B); (3) Count III—Common Law Unfair Competition; and (4) Count IV—Trade Libel generally allege that CAS has engaged in false advertising. Counts II-IV are not factually related to Count I.

On August 14, 2012, the Court granted-in-part a motion filed by CAS to stay this lawsuit pending the outcome of the reexamination/reissue proceeding for the '065 patent. In this motion, CAS argued that the extent of any damages to Nellcor cannot be determined until the merged reissue/reexamination proceeding is finished. After considering the merits of the motion, the Court stayed only discovery and trial of the damages portion of Count I. The Court did not stay any other aspect or claim in the case. (Order Granting-In-Part Def.'s Mot. to Stay, Dkt. No. 37.)

On July 20, 2012, Plaintiff Nellcor filed a motion for partial summary judgment on Count I of the Complaint for breach of the settlement agreement. (Dkt. No. 34.) The Court held oral argument on October 18, 2012. On December 19, 2012, the Court denied the motion in a written opinion. (Dkt. No. 55.) On January 2, 2013, Nellcor filed a motion for reconsideration. (Dkt. No. 60.)

Based on the Court's Opinion denying Nellcor's motion for summary judgment and the fact that resolution of the breach of contract count depends solely on the meaning of the "U.S. Patent No. 6,615,065," on January 3, 2013, CAS filed the present motion for summary judgment, which seeks dismissal of Nellcor's breach of contract claim (Count I of the Complaint). (Dkt. No. 63 and 64.)

The Court then held two separate settlement conferences in an effort to allow the parties an opportunity to settle this lawsuit. However, the parties were unable to come to an agreement.

Because the parties were not able to settle this lawsuit, the Court began to decide the remaining dispositive motions. On April 23, 2013, the Court denied Nellcor's motion for reconsideration as to its summary judgment motion. Now, the Court turns to the present motion for summary judgment, Defendant CAS's Motion for Summary Judgment on Count I of the Complaint. (Dkt. No. 63.)

### STANDARD FOR A SUMMARY JUDGMENT MOTION

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). Rule 56(a) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

8

The non-moving party may not rest upon its mere allegations, however, but rather must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The mere existence of a scintilla of evidence in support of the nonmoving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 432 (6th Cir. 2002).

## ANALYSIS

**A.     Count I–CAS Did Not Breach the Settlement Agreement by Filing the Protest Challenging the Validity of the Amended Claims in the Merged Reissue/Reexamination Proceeding.**

In the Settlement Agreement, CAS promised not to challenge the validity of "U.S. Patent No. 6,615,065." Specifically, the Settlement Agreement states in pertinent part:

> CAS covenants: . . . (ii) not to challenge or assist a Third Party in challenging the validity, enforceability or ownership of the Litigated Patents in the United States Patent and Trademark Office (collectively, the "CAS Covenant"). Notwithstanding the foregoing sentence, if the Litigated Patents are re-asserted against CAS after the Effective Date of this Agreement, CAS may challenge (I) the validity of the Litigated Patents and/or (ii) the enforceability of the Litigated Patents due solely to alleged inequitable conduct.

The Settlement Agreement defines "Litigated Patents" in Section 1.24 as follows: "'Litigated Patents' as used herein shall mean U.S. Patent Nos. 5,482,034, 5,902,235, and/or 6,615,065."

CAS argues that it should be granted summary judgment on Nellcor's breach of contract claim because it did not breach the settlement agreement by filing the June 27, 2011, protest in the merged reissue/reexamination proceeding where it argued that the amended pending claims in that proceeding were invalid. On the other hand, Nellcor argues that the reissue/reexamination proceeding was part of "U.S. Patent No. 6,615,065." According to Nellcor, because the reexamination/reissue proceeding was part of the '065 Patent, Nellcor argues that CAS breached the

9

settlement agreement when it filed the protest arguing that the amended claims in the merged reissue/reexamination proceeding were invalid.

Both parties agree that the issue before the Court concerning whether CAS breached the settlement agreement is whether the meaning of "U.S. Patent No. 6,615,065" included the amended claims in the reissue/reexamination proceeding. If "U.S. Patent No. 6,615,065" is interpreted to include the then pending amended claims in the reexamination/reissue proceeding containing the cross-talk feature, then CAS would have breached the settlement agreement by filing the June 27, 2011, protest.

The Settlement Agreement provides that it shall be interpreted "in accordance with the laws of the United States of America and the State of Michigan, without reference to conflict of laws principles." (Settlement Agreement § 9.1.)

A settlement agreement is a contract. *Gramer v. Gramer*, 207 Mich. App. 123, 125 (1994). Under Michigan law, the elements for a breach of contract claim are: (1) a contract existed between the parties; (2) the contract imposes an obligation upon a party; (3) the party breaches that obligation; and (4) the breach caused injury to the other party. *Nash Finch Co. v. 2125 Vienna Corp.*, 2008 WL 786804, *4 (E.D. Mich. 2008).

Under Michigan law, "if the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich. 19, 24 (2008). If a contractual provision is unambiguous, under the parol evidence rule, a party may not use extrinsic evidence to interpret the unambiguous contractual language. *Shay v. Aldrich*, 487 Mich. 648, 667 (2010). On the other hand, when a contractual provision is ambiguous, extrinsic evidence is admissible to determine the actual

10

intent of the parties.  Michigan courts "will not create ambiguity where the terms of the contract are clear." *City of Grosse Pointe Park v. Michigan Municipal Liability and Prop. Pool*, 473 Mich. 188, 198 (2005).  While the proper interpretation of an unambiguous contractual provision is a question of law for the judge, interpretation of an ambiguous contractual provision is for a jury.  *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469-70 (2003).

After considering the parties arguments and the facts of the case, the Court finds that CAS is entitled to summary judgment on Count I of the Complaint.

The Court finds that there is no genuine issue of material fact as at the time CAS filed the protest in the merged reissue/reexamination proceeding, the amended claims pending in the reissue/reexamination proceeding which were challenged in the protest, although related to the '065 Patent, were not part of "U.S. Patent No. 6,615,065" and therefore CAS did not breach the settlement agreement by filing the protest challenging the validity of those claims.   In patent law, the '065 Patent is a specific document issued by the USPTO after a lengthy examination process.  A patent grants its owner the right to exclude others from making, using, selling, and/or importing the invention set forth in the claims of the patent.  *See, e.g.*, 35 U.S.C. § 154(a)(1).  A patent is very different from a patent application or even for that matter claims pending in a reexamination proceeding, which are not enforceable property rights.  A patent application is merely an application, or request, for a new patent.

The USPTO treats a merged reissue/reexamination proceeding as a reissue patent application, not an *ex parte* reexamination, although parallel files are maintained for the reissue application and reexamination proceeding.  USPTO regulation 37 C.F.R. § 1.565(d) provides that a merged reissue/reexamination proceeding will result in a reissued patent, not a reexamination certificate

(assuming that the reissue application is not abandoned later by the applicant). Moreover, USPTO regulation 37 C.F.R. § 1.565(d) states that a merged reissue/reexamination proceeding will follow the procedural rules for a reissue application (e.g., 37 C.F.R. §§ 1.171-1.179), not a reexamination proceeding. USPTO regulation 37 C.F.R. 1.565(d) states:

> (d) If a reissue application and an ex parte reexamination proceeding . . . are pending concurrently on a patent, a decision will usually be made to merge the two proceedings or to suspend one of the two proceedings. Where merger of a reissue application and an ex parte reexamination proceeding is ordered, the merged examination will be conducted in accordance with §§ 1.171 through 1.179, and the patent owner will be required to place and maintain the same claims in the reissue application and the ex parte reexamination proceeding during the pendency of the merged proceeding. The examiner's actions and responses by the patent owner in a merged proceeding will apply to both the reissue application and the ex parte reexamination proceeding and will be physically entered into both files. Any ex parte reexamination proceeding merged with a reissue application shall be concluded by the grant of the reissued patent. For merger of a reissue application and an inter partes reexamination, see § 1.991.

Based on the above, the Courts finds that the merged reissue/reexamination proceeding is more akin to a reissue application than a reexamination proceeding.

Like an ordinary patent application, a reissue patent application is not a patent. A reissue patent application is an application or request for the USPTO to reissue the original patent because the original patent has one or more errors in it. *See, e.g.*, 35 U.S.C. § 251. Similar to an ordinary patent application, a reissue patent application must go through an examination process with the USPTO, where the USPTO will decide whether or not to grant a reissued patent. 37 C.F.R. § 1.176(a). If the USPTO decides to issue the amended claims in the merged reissue/reexamination into a patent, the original patent will be "surrendered," or terminated, and the USPTO will reissue the patent under a new patent number (e.g., RE12,345), not under the original patent number.

(October 18, 2012 Oral Argument Tr. at pgs. 6-7 ll. 9-9.)   The Code of Federal Regulations states

that "[t]he application for reissue of a patent shall constitute an offer to surrender that patent, and the

surrender shall take effect upon reissue of the patent.   Until a reissue application is granted, the

original patent shall remain in effect."   37 C.F.R. § 1.178(a).   Similarly, the statutes on reissue

proceedings, 35 U.S.C. §§ 251-252, specifically state that at the conclusion of a reissue proceeding

the original patent is "surrendered" and the USPTO will grant a new reissued patent if the patent

owner is entitled to a patent.   35 U.S.C. § 251 states as follows (emphasis added):

> **(a) In general.**--Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, <u>the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent</u>, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

> **(b) Multiple reissued patents.**--The Director may issue several reissued patents for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued patents.

> *       *       *

> **(d) Reissue patent enlarging scope of claims.**--No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

35 U.S.C. § 252 states (emphasis added):

> <u>The surrender of the original patent shall take effect upon the issue of the reissued patent</u>, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such

13

amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of the thing made, purchased, offered for sale, used, or imported as specified, or for the manufacture, use, offer for sale, or sale in the United States of which substantial preparation was made before the grant of the reissue, and the court may also provide for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

Based on the above statutes and regulations, the Court finds that the pending merged reissue/reexamination proceeding was not the '065 Patent at the time CAS filed the protest. Rather, at the time CAS filed the protest in June 2011, the merged proceeding was a request for a new reissue patent which would have a new patent number and constituted an offer to surrender the original patent. *See* 37 C.F.R. 1.178(a). In fact, 37 C.F.R. 1.178(a) states that "[u]ntil a reissue application is granted, the original patent shall remain in effect." The USPTO gave the reissue patent application Serial No. 11/219,298 and the reexamination proceeding Serial No. 90/010,128. These reference numbers are used to distinguish the pending merged reissue/reexamination proceeding

14

from the issued patent, which remained in effect and had enforceable claims.  While Nellcor argues that the protest was directed at the '065 Patent, the protest was actually directed at the pending amended claims in the merged reissue/reexamination proceeding, which were not part of the '065 Patent.[4]  These pending claims were not enforceable property rights.  Thus, the Court finds that the June 2011 protest was not directed at the '065 Patent.  Although the pending amended claims in the merged reissue/reexamination proceeding were related to or stemmed from the '065 Patent, the pending amended claims were not part of the '065 Patent.  At the very least, the claims pending in the merged reissue/reexamination proceeding would have needed to be the originally issued claims in the '065 Patent to be part of the '065 Patent.

Nellcor argues that the USPTO refers to the merged reissue/reexamination proceeding as the '065 Patent.  This is not accurate.  The USPTO referred to the merged reissue/reexamination as the "In re Reissue Application of Bruce J. Barrett et al." and "In re Bruce J. Barrett et al. Reexamination Proceeding," using "Application No. 11/219,298" and "Control No. 90/010,128," respectively.  For example, the USPTO's caption is reproduced below:

> In re Reissue Application of
> Bruce J. Barrett et al.
> Application No.: 11/219,298
> Filed: September 2, 2005
> For: U.S. Patent No. 6,615,065
>
> In re Bruce J. Barrett et al.
> Reexamination Proceeding
> Control No.: 90/010,128

---

[4] Protests may be filed against pending patent applications, but generally not in reexamination proceedings,  Nellcor admitted at oral argument for its previous motion for summary judgment that protests cannot be filed in *ex parte* reexamination proceedings unless the reexamination proceeding has been merged with a reissue patent application.  (*See e.g.*, Oral Argument Tr., Dkt. No. 76-7 at pgs. 7-8.)

Filed: March 28, 2008
For: U.S. Patent No.: 6,615,065

(USPTO Supplement to Prior Decision, Ex. 1 to Pl.'s Resp. Br., Dkt. No. 76-3.)   As can be seen above, the caption refers to the proceeding as a merged reissue application and reexamination proceeding.  While the caption states "For: U.S. Patent No.: 6,615,065," this refers only to the fact that both the reissue application and reexamination proceeding are related to or stem from the '065 Patent, not that the pending claims in the reissue/reexamination proceeding are part of the '065 Patent.  After all, the reissue patent application is request for a new patent and "constitutes an offer to surrender the original patent."  37 C.F.R.  1.178(a).

The Court also bases its construction of the disputed contract terms in the context of this particular settlement agreement and the language used in the settlement agreement. The contract at issue was a settlement agreement which resolved an on-going patent infringement lawsuit.  The contractual provision at issue in the settlement agreement provided that CAS would not challenge the validity of the "Litigated Patents" in the USPTO unless Nellcor sued CAS again for patent infringement.  The term "Litigated Patents" was defined to mean the three patents Nellcor asserted in the lawsuit as being infringed, including "U.S. Patent No. 6,615,065." The settlement agreement was narrow in scope and was essentially a "cease fire" where no money exchanged hands.  The nature of the settlement agreement and the term "Litigated Patents" evidences the intent to limit the meaning to the specific patents actually litigated in the lawsuit, not a future patent or a pending patent application.  Moreover, it is important to note that every word in a claim of a patent can be significant in an infringement or invalidity analysis, even amended claim language that is not "new matter" within the meaning of patent law.  When one also considers the fact that any new claims

16

issued by the USPTO from the merged reissue/reexamination proceeding would also get the statutory presumption of validity under 35 U.S.C. § 282, Nellcor's proposed construction of "U.S. Patent No. 6,615,065" becomes more unreasonable. In effect, Nellcor argues that CAS agreed to sit on the sidelines while Nellcor built a stronger case against it. Nellcor's construction of "U.S. Patent No. 6,615,065" would likely lead to an unintended result in this particular factual situation. Given these circumstances, it is more reasonable to conclude that the parties intended the settlement agreement to prevent CAS from challenging the issued and enforceable claims in the '065 Patent at the time the parties signed the settlement agreement.

The Court finds that other contractual provisions in the Settlement Agreement, which specifically mention "reissue" and "reexamination" proceedings, support the Court's conclusion that "U.S. Patent No. 6,615,065" was not intended to include the amended claims ultimately issued from merged reissue/reexamination proceeding. The logical conclusion that must be drawn from this fact is that the parties did not intend the contractual provision at issue to include reissue patents and applications. For example, the settlement agreement defines "Somanetics IP" as:

> 1.30    'Somanetics IP' as used herein shall mean all U.S. patents issued as of the Complaint Date that were owned by or licensed exclusively to the former Somanetics Corporation, or as to which the former Somanetics Corporation had the right to sue for infringement thereof, together with all registrations, <u>reissues</u>, divisionals, continuations, continuations-in-part, <u>reexaminations</u>, renewals and foreign counterparts of the foregoing, as well as all other U.S. patents claiming priority from any of the foregoing.

(Settlement Agreement § 1.30 (emphasis added.)) If the parties wanted to include the pending reissue/reexamination proceeding within the definition of "Litigated Patents," the reasonable conclusion is that they would have done so as was done in other contractual provisions.

17

Nellcor argues that the meaning of "U.S. Patent No. 6,615,065" in the Settlement Agreement must be considered in light of the facts that at the time the settlement agreement was signed, the merged reissue/reexamination proceeding was already on-going and the original claims as issued in the '065 patent had already been amended. Nellcor argues that, because all the original claims in the '065 patent were as a practical matter gone at the time the parties entered into the settlement agreement, there would be no reason for CAS to file another request for reexamination directed to the originally issued claims. Nellcor argues that an interpretation of "U.S. Patent No. 6,165,065" that does not include the amended claims of the reissue/reexamination would render the covenant meaningless. Even assuming this is not extrinsic evidence, the covenant was not meaningless as to the '065 patent because it prevented CAS from making further challenges to the original '065 patent or its original claims which were still in effect.

In its motion, Nellcor argues that recent authority from the Federal Circuit controls the outcome of this motion, specifically *Intel Corp. v. Negotiated Data Solutions, Inc.*, 703 F.3d 1360 (Fed. Cir. 2012). The Court finds the facts of the present case are distinguishable from the facts of *Intel Corp.* In *Intel Corp.*, Intel and National Semiconductor entered into a broad patent cross-license agreement. The agreement gave Intel a royalty-free license under "National Patents" for the life of the patents. The license agreement defined National Patents as:

> all classes or types of patents and utility models of all countries of the world, applications for which have a first effective filing date in any country prior to the date of expiration or termination of this Agreement, in respect of which, as of the EFFECTIVE DATE, or thereafter during the term of this Agreement, NATIONAL owns or controls . . . [or has] the right to grant licenses of the scope granted herein.

18

After Intel and National entered into the license agreement, National assigned several of the licensed patents to Vertical Networks, Inc. ("Vertical"), who filed broadening reissue patent applications with the USPTO for three of the licensed patents.  Vertical then assigned the original patents and their corresponding reissue patent applications to Negotiated Data Solutions, Inc. ("N-Data").  Later, well after the patent licensing contract expired, the USPTO issued to N-Data reissue patents based on the original patents.  N-Data then sued Dell, Inc., Intel's customer, for infringing the reissued patents.  Intel intervened in the suit and argued that its products sold to Dell did not infringe the reissue patents because its products were covered by the license agreement.  Applying California law, the Federal Circuit stated that "the key question in this case is not whether the Reissue Patents are National Patents under the definition set forth in the Agreement, but whether the Agreement evinces an intent on the part of the parties that Reissue Patents *should be treated as* National Patents under the Agreement." *Id*. at 1365.  In considering the broad nature of the license agreement and factual situation, the Federal Circuit held that "it is reasonable to conclude that the parties' mutual intent at the time of contracting was that the broad and unrestricted grant of license under National Patents extended to any reissues thereof." *Id*. at 1366 (emphasis added).  It is clear that the Federal Circuit based its decision on the broad nature of the license agreement in determining the mutual intent of the parties.  In contrast, in this case, the covenant at issue was specifically limited to the "Litigated Patents" in the context of a narrowly drafted settlement agreement.  In *Intel*, the Federal Circuit was also concerned that N-Data could inequitably avoid the effect of the license agreement by unilaterally reissuing a licensed patent after the contract term.  *Id*. at 1367.  The same issue is not present in this case.  Accordingly, the Court finds the facts of this case to be distinguishable.

19

The Court has considered the other arguments raised by Nellcor, but does not find them persuasive.

**B.      CAS's Request for Attorney's Fees.**

In its motion, CAS argues that if the Court grants its summary judgment motion on Nellcor's claim for breach of the settlement agreement, it is entitled to an award of attorneys' fees pursuant to Section 4.5 of the settlement agreement. Section 4.5 states:

> The prevailing Party in any legal action taken to enforce one or more terms of this Agreement shall recover all of its costs and expenses, including attorneys' fees and experts' fees, that were reasonable and necessarily incurred in connection with an such legal action.

In its response brief, Nellcor does not dispute that CAS is entitled to attorneys' fees if CAS prevails on this motion for summary judgment.

Local Rule 54.1.2 provides that a motion for attorneys' fees "shall be supported by an affidavit of counsel setting out in detail the number of hours spent on each aspect of the case, the rate customarily charged by counsel for such work, the prevailing rate charged in the community for similar services, and any other factors which the court should consider in making the award." Local Rule 54.1.2 is consistent with the language "reasonable and necessarily incurred" contained in Section 4.5 of the settlement agreement. CAS has not submitted an affidavit from counsel as required by Local Rule 54.1.2. CAS is free to submit an application for attorney's fees pursuant to Local Rule 54.1.2.

**CONCLUSION**

**IT IS ORDERED** that CAS's Motion for Summary Judgment as to Count I is **GRANTED**.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 11, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 11, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager